UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM DAVID CHANCEY,

           Plaintiff,

-vs-                                                 Case No. 8:04-cv-1884-T-24MSS

CHARLES WELLS, Manatee County Sheriff, and
DEPUTY BARRY OVERSTREET, Manatee
County Sheriff's Department,

           Defendant.
_____/

## O R D E R

This cause comes before the Court for consideration of Defendant Overstreet's Motion for Summary Judgment (Doc. No. 28) and Defendant Wells' Motion for Summary Judgment (Doc. No. 29). Plaintiff filed a Memorandum of Law in Opposition to both motions (Doc. No. 34), and Defendants filed a Reply Memorandum (Doc. No. 38).

**I.**

**BACKGROUND**

On August 16, 2002, at approximately 11:43 p.m., Manatee County Sheriff's Deputy Barry Overstreet was dispatched to a burglary at the Booz residence in Bradenton. Upon arrival, Deputy Overstreet met two boys, Cody Roach (13 ½ years old) and Gordon Booz (15 years old). Deputy Overstreet, who had never met the boys before, asked them what happened, and they proceeded to tell Deputy Overstreet that the Plaintiff, William Chancey, and Cole Roach (Cody Roach's twin brother) entered the Booz home without permission and stole an amplifier belonging to Jeremiah Booz (Gordon Booz's older brother). After the boys told Deputy Overstreet what had happened,

Deputy Overstreet had both boys fill out written affidavits. Deputy Overstreet administered an oath to Cody Roach and Gordon Booz before they signed their statements.

> Gordon Booz's statement was as follows:
>
> Aproximitly at 10:43 we recieved a phone call from Cole Roach while at Jermey Esteves's house.  I awnsered the phone it was Cole Roach asking for his brother Cody Roach- Cole Roach asked Cody Roach if he could take Jerimiah Booz's stereo amplifier out of his bedroom and place it at the end of the driveway so he could take it.  Cody Roach implied "NO" i wouldn't do that to my friend.  And Cody Roach hanged up the phone.  At 10:46 pm Cole Roach called back and offered Cody Roach 20$ to take the amplifier out of the house and place it at the end of the drive way so he could pick it up without Jerimiah Booz knowing.  The individual trying to get the amplifier from Jerimiah Booz was Billy Chansey the individual who sold Jerimiah Booz the amplifier.  At 10:52 pm Cole Roach and Billy Chansey busted through my front door and threatened to kick Cole Roach in the genetals if he didn't tell him where the amp was placed at that time I Gordon Booz repeadetly asked Billy Chansey and Cole Roach to exit my yard at that time Cole Roach ran into my bedroom where the amplifier was placed I then repeatily asked Both Billy and Cole to leave my yard or i was going to call the police at that time Billy shrugged his sholeders and walked into my bedroom and picked up the amplifier at that point I started to get loud and repeaditly screamed get out of my house or i will call the police at that time he said "Fuck you" its my amplifier at that time I offered Billy Chansey my pay check wich was more than what was owed on the amp he said "i don't want your money i want Jerimiahs Booz's money" i said "no take this and leave the amp here he said no" and  said fuck you and left after they left (Billy and Cole) i tried to get a hold of my parents.

Arrest Report, pgs. 5-6, Exhibit 5 to Doc. No. 28.

> Cody Roach's statement was as follows:
>
> I was at my brothers friends house because his friend gave me a ride so I could go to Tim Booz's house while I was at my brother's friends when I overheard my brother Cole Roach and his friend Billy Chancey talking about steeling my friend Jerimiah Booz's amplifier. So then I left to go to Jerimiah's house nobody was home but Gordon Booz. Gordon and I hung out for a while then my brother called. He told me that Billy said he would give me five dollars if I recieved the amp and put it somewhere where he could pick it up. My reply was no. He called again offering $20. My reply was still no. After I hung up the phone I let Gordon know that he should lock the house up. (About 5 min after) we went to lock the door when my brother Cole entered through the door withbout permission to enter with Billy behind him. They came in and and were talking about the amp with Gordon. Gordon would

>not tell him where the amp was so Cole went into Jerimiahs room without permission to see if the amp was there. He seen the amp and told Billy it was there. After Gordon repeatedly told him to leave. he walked into the room grabbed the amp and came back to the dining room. Gordon told him leave the amp alone and he would give him his 100.00 paycheck which is what Jerimiah owed him Billy refused to take the money because it wasn't Gordon deal. After that Billy and Cole left and I don't know where they went.

Arrest Report, pgs. 7-8, Exh. 5 to Doc. No. 28.

In addition to speaking with Cody Roach and Gordon Booz at the scene, Deputy Overstreet also spoke to Jeremiah Booz. Jeremiah told Deputy Overstreet that he owned the amplifier that was stolen by the Plaintiff but that he still owed the Plaintiff $100 for the amplifier. Jeremiah also told Deputy Overstreet that he was not present when the amplifier was stolen.

At the scene, someone told Deputy Overstreet that the Plaintiff could be located at Livingston's pool hall. After obtaining the boys' statements, Deputy Overstreet radioed two separate deputies and asked them to attempt to locate the two suspects - William Chancey and Cole Roach.

Deputy Zink radioed Deputy Overstreet that he had been to Livingston's pool hall and learned that the Plaintiff had been there earlier but had left. Deputy Zink informed Deputy Overstreet that an informant at Livingston's pool hall led him to the Plaintiff's house, and he observed the Plaintiff's car was parked outside the house.[1]

Deputy Overstreet then drove from the Booz residence over to the Plaintiff's home and met Deputy Zink outstide. Deputies Overstreet and Zink then walked up to the front door and knocked. The Plaintiff answered the door and let the deputies inside. Present in the home with the Plaintiff were his mother, Regina Chancey, his brother, Anthony Chancey, and his friend, Darrell Morley.

---

[1]The other deputy never located Cole Roach.

Deputy Overstreet explained to the Plaintiff why he was there, read him his Miranda rights, and then interviewed him. After being read his Miranda rights, the Plaintiff denied any involvement in the burglary. The Plaintiff claimed he was never at the Booz residence on that day and provided an alibi. The Plaintiff stated that earlier that day he had been at a church function, then he had been at Chili's, then he shot pool at Livingston's pool hall, and then he came home. The Plaintiff further stated that he had no idea why Gordon Booz and Cody Roach would accuse him of stealing the amplifier.

After speaking with the Plaintiff, Deputy Overstreet also spoke to the Plaintiff's brother, Anthony Chancey, and his friend, Darrell Morley. Both told Deputy Overstreet that the Plaintiff could not have committed the crime because he was with them at Livingston's pool hall at the time the burglary occurred. They also stated that the Plaintiff's cousin, Kristen Chancey, and her boyfriend, Matt, were with them at Livingston's as well.[2] Darrell Morley and Anthony Chancey showed Deputy Overstreet a receipt from Livingston's pool hall for two people shooting pool. Deputy Overstreet discounted the significance of the receipt because the receipt did not show that the Plaintiff was playing pool at the time of the burglary - the receipt was for two people playing pool but Anthony Chancey and Darrell Morley were attempting to use it to prove that all three of them were playing pool.

Deputy Overstreet asked for and obtained permission from the Plaintiff to search his bedroom and car for the amplifier. Deputy Overstreet searched both but did not locate the amplifier. Deputy Overstreet then arrested the Plaintiff for burglary. Deputy Overstreet determined that there

---

[2]Neither Kristen Chancey nor her boyfriend were at the Plaintiff's home during the time of arrest. Deputy Overstreet did not attempt to locate Kristen Chancey or her boyfriend, Matt, before deciding to arrest the Plaintiff.

was probable cause to charge the Plaintiff with burglary based upon Gordon Booz and Cody Roach's sworn statements. At the time of the arrest, Deputy Overstreet realized that Gordon Booz and Cody Roach's statements conflicted with those of the Plaintiff and his two alibi witnesses and that somebody was not being honest. However, Deputy Overstreet discounted the alibi because it came from the suspect, the suspect's brother, and the suspect's best friend. Furthermore, Deputy Overstreet felt it more likely that the Plaintiff's brother and best friend would lie to cover for him than it was for Cody Roach to lie to falsely implicate his own twin brother, Cole Roach, in the burglary.

After he arrested the Plaintiff, Deputy Overstreet asked Deputy Zink to obtain sworn statements from Anthony Chancey and Darrell Morley. Deputy Zink obtained their sworn statements and subsequently delivered them to Deputy Overstreet. Deputy Overstreet included Anthony Chancey and Darrell Morley's sworn statements in his arrest report.

Plaintiff's Second Amended Complaint (Doc. No. 2) alleges claims against Defendant Charles Wells, Manatee County Sheriff, for false arrest (Count I) and negligence (Count II), claims against Defendant Overstreet for malicious prosecution (Count III) and negligence (Count IV)[3], and a claim against both Defendants for a violation of § 1983 (Count V).

## II.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

[3] The Court notes that Count IV is titled in the Second Amended Complaint as against both Defendants but the allegations of the claim are only as to Defendant Overstreet.

any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file that there are no genuine issues of material fact that should be decided at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Clark v. Coats & Clark, Inc., 929 F.2d 604 (11th Cir. 1991). When the party moving for the summary judgment does not bear the burden of persuasion on the issue at trial, the moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. Id. When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. Id. at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989); Samples on behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

WSB-TV v. Lee, 842 F.2d 1266, 1270 (11th Cir. 1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. Augusta Iron & Steel Works v. Employers Insurance of Wausau, 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

### III.

### DISCUSSION

Defendant Overstreet now moves for summary judgment as to Counts III, IV and V. Defendant Overstreet contends that the undisputed facts establish that he is entitled to summary judgment as a matter of law as to Counts III and V because he had probable cause to arrest the Plaintiff for burglary. Alternatively, Defendant Overstreet argues that even without probable cause, he is nonetheless entitled to summary judgment as to Count V because he had arguable probable cause to arrest the Plaintiff. Finally, Defendant Overstreet moves for summary judgment as to Count IV on the grounds that he is sovereignly immune from all actions for negligence.

Defendant Wells moves this Court for summary judgment as to Counts I, II and V. Defendant Wells contends that the undisputed facts establish that he is entitled to summary judgment as a matter of law as to Counts I, II and V because Deputy Overstreet had probable cause to arrest the Plaintiff for burglary.

### A. False Arrest

The Plaintiff alleges a state law claim for false arrest in Count I against Defendant Wells and a § 1983 claim in Count V against Defendant Wells and Defendant Overstreet.[4] Presence of probable cause for arrest is an absolute bar to a federal civil rights claim under § 1983. Marx v. Gumbinner, 905 F.2d 1503, 1505-06 (11th Cir. 1990); Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996). Specifically, probable cause exists where:

> the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. Probable cause does not require overwhelmingly convincing evidence, but only reasonably trustworthy information and probable cause must be judged not with clinical detachment but with a common sense view to the realities of normal life.

Marx, 905 F.2d at 1506 (citations omitted).

Plaintiff argues that Deputy Overstreet's arrest was wrongful and without probable cause because, prior to making the arrest, he failed to adequately investigate the alibi claims of the Plaintiff, his brother and friend.[5] The case law, however, is well established that once a police officer has probable cause to make an arrest, neither an alibi presented to the officer prior to arrest

---

[4] The standard for determining the existence of probable cause is the same under both Florida and federal law. Rankin v. Evans, 133 F.3d 1425, 1433 (11th Cir. 1998). The only difference in the probable cause analysis applicable to the state and federal claims pertaining to false arrest is which party carries the burden of proving whether probable cause existed. Id. at 1436. The existence of probable cause constitutes an affirmative defense to the claims of false arrest and imprisonment under Florida law. Id. However, the plaintiff has the burden of demonstrating the absence of probable cause in order to succeed in his § 1983 claim. Id.

[5] Plaintiff also argues that Gordon Booz and Cody Roach's affidavits were inconsistent, suspicious and suggested that the boys were lying. The Court finds this contention to be without merit. The "inconsistencies" pointed out by Plaintiff are, in fact, not inconsistencies or, at most, are minor, insignificant discrepancies that do not undermine probable cause.

nor a failure to investigate such an alibi prior to arrest will negate the original probable cause. See Marx, 905 F.2d at 1507 n.6 (police officers who initially have probable cause to arrest a suspect are not required to forego arresting a suspect simply because the suspect offered a different explanation at the time of arrest). In Romero v. Fay, 45 F.3d 1472 (10th Cir. 1995), the Tenth Circuit, citing Marx, held:

> [W]e reject Plaintiff's contention that [the officer]'s failure to contact [Plaintiff's] alleged alibi witnesses in itself amounted to a constitutional violation that rendered the arrest without probable cause. [The officer]'s failure to investigate Plaintiff's alleged alibi witnesses did not negate the probable cause for the warrantless arrest in the absence of a showing that [the officer]'s initial probable cause determination was itself unreasonable. Once [the officer] concluded based on the facts and information known to him that probable cause existed to arrest Plaintiff for [murder], his failure to question Plaintiff's alibi witnesses prior to the arrest did not negate probable cause. Thus, [the officer]'s failure to investigate Plaintiff's alibi witnesses prior to arrest did not constitute a constitutional violation.

Id. at 1477-78 (citation omitted); see also Brodnicki v. City of Omaha, 75 F.3d 1261, 1264 (8th Cir. 1996)(rejecting plaintiff's argument that the police had to investigate his alibi before making an arrest); Beauchamp v. City of Noblesville, 320 F.3d 733, 745-46 (7th Cir. 2003)(once an officer has probable cause, he need not continue investigating to test the suspect's claim of innocence); Criss v. City of Kent, 867 F.2d 259, 263 (6th Cir. 1988)("A policeman, however, is under no obligation to give any credence to a suspect's story nor should a plausible explanation [by a suspect] in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.").

The Court finds Plaintiff's argument that Deputy Overstreet did not conduct a reasonable investigation and that he ignored exculpatory evidence without merit. Unlike the factual scenarios in the case law cited by the Plaintiff, Defendant Overstreet did in fact conduct a reasonable investigation and did not ignore exculpatory evidence. In the instant case, Defendant

Overstreet reasonably interviewed the witnesses readily available at the scene of the crime, and he weighed the credibility of the witnesses. Defendant Overstreet had the sworn statements of a victim and an eyewitness who positively identified the Plaintiff as one of two individuals who entered the Booz household and stole an amplifier. A police officer is generally entitled to rely on a victim's criminal complaint as support for probable cause. See Rankin, 133 F.3d at 1441. Defendant Overstreet did not ignore any available or undisputed facts. Accordingly, the Court finds that Deputy Overstreet had probable cause to arrest the Plaintiff and that the Defendants are entitled to summary judgment as to Counts I and V.

The Court notes that even if Defendant Overstreet did not have probable cause to arrest Plaintiff, actual probable cause is not necessary to defeat a § 1983 action for false arrest. L.S.T., Inc. v. Crow, 49 F.3d 679, 685 (11th Cir. 1995). A law enforcement officer who "reasonably but mistakenly conclude[s] that probable cause is present" is entitled to immunity. Id. (citing Hunter v. Bryant, 502 U.S. 224, 227 (1991)). In other words, if a reasonable police officer, knowing what Deputy Overstreet knew, could have believed there was probable cause for the arrest, qualified immunity shields Deputy Overstreet from a § 1983 claim.

B. Negligence as to Defendant Wells

In Count II, Plaintiff alleges a state law negligence claim against Defendant Wells for failing to properly train Deputy Overstreet. Plaintiff has alleged that Deputy Overstreet falsely arrested the Plaintiff because he was inadequately trained concerning "the methods of conducting thorough investigations into alleged criminal activities, including burglaries and break-ins." Second Amended Complaint ¶ 14, Doc. No. 2. This Court, however, has found that there was probable cause to arrest Plaintiff, and Plaintiff, therefore, was not falsely arrested.

Accordingly, Plaintiff has no cause of action against Defendant Wells for failure to properly train Deputy Overstreet because, regardless of training, the arrest was proper. Defendant Wells, therefore, is entitled to summary judgment as to Count II.

### C. Malicious Prosecution

In Count III, Plaintiff asserts a state law malicious prosecution claim against Deputy Overstreet. There are six elements to a state law malicious prosecution claim: (1) the existence of a legal proceeding against plaintiff; (2) proof that the proceeding was instituted by defendant; (3) the bona fide determination of the proceeding in favor of plaintiff; (4) *a lack of probable cause for the institution of the proceeding*; (5) the existence of malice; and (6) damage to plaintiff. See Miami Herald Publishing Co. v. Ferre, 636 F. Supp. 970, 977 (S.D. Fla. 1985)(emphasis added)(citing S.H. Kress & Co. v. Powell, 180 So. 757, 762 (Fla. 1938)).

As discussed above, Deputy Overstreet had probable cause to arrest the Plaintiff. Accordingly, Plaintiff's malicious prosecution claim fails as a matter of law, and Defendant Overstreet is entitled to summary judgment as to Count III.

### D. Negligence as to Defendant Overstreet

In Count IV, the Plaintiff alleges a state law negligence claim against Defendant Overstreet based on the assertion that Deputy Overstreet negligently breached a duty owed to the Plaintiff to "properly and fully: (a) identify and interview all the witnesses involved in this matter; (b) gather all evidence pertaining to this matter; (c) not ignore evidence of the Plaintiff's innocence; (d) perform a background check on the complaining parties; (e) present the information from his alleged investigation to the State Attorney's office for review before making a felony arrest; (f) thoroughly and professionally investigate the matter before

handcuffing, arresting, and causing the Plaintiff to be confined to jail." Second Amended Complaint ¶ 28, Doc. No. 2. Without addressing whether the Plaintiff has asserted a proper cause of action against Defendant Overstreet in Count IV, the Court finds that Plaintiff has no cause of action against Defendant Overstreet for negligence because, regardless of the alleged failures on the part of Defendant Overstreet, the arrest was proper. Defendant Overstreet, therefore, is entitled to summary judgment as to Count IV.

Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) Defendant Overstreet's Motion for Summary Judgment (Doc. No. 28) is **GRANTED**.

(2) Defendant Wells' Motion for Summary Judgment (Doc. No. 29) is **GRANTED**.

(3) All other pending motions are denied as moot.

(4) The Clerk is directed to enter judgment in favor of the Defendants and against the Plaintiff and **CLOSE** this case.

**DONE AND ORDERED** at Tampa, Florida, this 19th day of October, 2005.

SUSAN C. BUCKLEW
United States District Judge